Royce Kershaw v. Commissioner.
Kershaw v. Commissioner
Docket No. 39326.
United States Tax Court
1953 Tax Ct. Memo LEXIS 115; 12 T.C.M. (CCH) 1051; T.C.M. (RIA) 53310; September 16, 1953
*115 1. In 1942, petitioner was a partner in the partnership of Kershaw and Blount which was engaged in the construction of a short line railroad. The contract was completed in 1942, and petitioner's net profits therefrom were $18,118.74. These profits he divided with his wife and two individuals to whom he was indebted in comparatively small amounts. The division of profits was 40 per cent to petitioner and 20 per cent each to the other three. Petitioner does not claim the two individuals to whom he was indebted were partners in the partnership of Kershaw and Blount but does claim they were joint venturers with him in his one-half share of the partnership enterprise. He now concedes his wife was neither a partner nor a joint venturer. Held, the two individuals who petitioner claims were joint venturers with him in his one-half partnership interest were not joint venturers and petitioner is taxable on his entire interest in the profits which he received from the partnership of Kershaw and Blount. On this issue the Commissioner is sustained. 2. After the partnership of Kershaw and Blount had completed its contract, petitioner organized another partnership, Royce Kershaw & Company, to *116 engage in the railroad construction business. This partnership was composed of Royce Kershaw, 40 per cent; A. P. Thomasson, 20 per cent; W. H. Martin, 20 per cent; and petitioner's wife, Miriam M. Kershaw, 20 per cent. The capital contributed by each partner was the share of profits which he received from Kershaw of the profits of the former partnership of Kershaw and Blount. Early in 1943, the partnership agreement was reduced to writing and petitioner was to receive a salary of $10,000 per annum before there was a division of profits. The Commissioner has determined that Thomasson was a partner but that Martin was not a partner. Held, Martin made an outright contribution of capital to the partnership business as his investment and entered into the agreement with a bona fide intention of becoming a partner, liable for losses as well as entitled to his share of the profits. His 20 per cent share of the profits in 1942 and 1943 are taxable to him and not to petitioner. On this issue the Commissioner is reversed. 3. The Commissioner has determined that Miriam, wife of petitioner, was not a partner in Royce Kershaw & Company because she did not contribute any capital which originated *117 with her and did not render any important and essential services to the partnership business. The evidence shows that Miriam Kershaw received an outright gift from her husband in 1942 of $3,623.75 and this sum she invested as capital in the newly organized partnership of Royce Kershaw & Company and in good faith and acting with a business purpose intended to join together with the other partners in the present conduct of the business. Held, Miriam Kershaw was a partner in the partnership of Royce Kershaw & Company during the years 1942, 1943, and 1944, and her share of the profits is taxable to her and not to the petitioner. On this issue the Commissioner is reversed. Fred S. Ball, Jr., Esq., for the petitioner. R. B. Wallace, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax as follows: Year
Deficiency
1943
$ 7,408.11
1944
11,724.46
The deficiency for 1943 is due to adjustment "(a) Partnership income $14,558.79" and is explained in the deficiency notice as follows: "Taxable Year Ended December 31, 1942 * * *
"(a) It is held that Miriam *118 M. Kershaw, W. H. Martin, and A. P. Thomasson were not members of the partnership known as Kershaw and Blount for the year 1942 within the meaning of the Internal Revenue Code. * * * "It is held that Miriam M. Kershaw for the years 1942 to 1948, inclusive, and W. H. Martin for the years 1942 and 1943, were not members of the partnership known as Royce Kershaw and Company within the meaning of the Internal Revenue Code." * * * Also a similar adjustment as above was made for 1943. For the year 1944, the deficiency is due to one adjustment "(a) Business income $16,569.61" and is explained as follows: "(a) It is held that Miriam M. Kershaw for the years 1942 to 1948, inclusive, and W. H. Martin for the years 1942 and 1943, were not members of the partnership known as Royce Kershaw and Company * * *." The petitioner contests these adjustments by appropriate assignments of error. However, in his brief petitioner now concedes that Miriam M. Kershaw, his wife, who will sometimes hereinafter be referred to as Miriam, was not a member of the partnership of Kershaw and Blount and that the sum which petitioner paid her out of his share of the profits of that partnership in 1942 was a *119 gift to her and that so much of the income from the partnership which was paid to her is taxable to petitioner. The year 1942 is involved because of the forgiveness provisions of the 1943 Act. Findings of Fact Petitioner Royce Kershaw is a resident of Montgomery, Alabama, and filed his returns with the Collector for the District of Alabama. Partnership of Kershaw and Blount Petitioner and one Blount formed a partnership in the early part of 1942 for the purpose of constructing 26 miles of railroad track in the State of Alabama. The contract was bid on and secured by Kershaw Company, an individual proprietorship of petitioner, then the contract was transferred to Kershaw and Blount, the newly organized partnership. In the year 1942, petitioner owed to A. P. Thomasson somewhere between $1,500 and $2,000 and owed to W. H. Martin between $600 and $1,000. These sums had been advanced to petitioner as loans in prior years and neither notes nor other security was given to the lenders to evidence the indebtedness. W. H. Martin is the father-in-law of petitioner and during the years in question was a resident of Columbus, Georgia, and was in business there. A. P. Thomasson was *120 a close friend of petitioner and resided in Mobile, Alabama, during the years in question. He was a successful businessman with a good credit rating. Petitioner's share of the profit from the Kershaw and Blount partnership was $18,118.74, which was paid to him by check dated November 18, 1942. Petitioner endorsed the check for deposit to the credit of Royce Kershaw & Company. Petitioner's $18,118.74 profit from Kershaw and Blount was entered on the capital accounts of the books of Royce Kershaw & Company as follows: Royce Kershaw
$7,247.50 (40%)
A. P. Thomasson
3,623.75 (20%)
W. H. Martin
3,623.75 (20%)
Miriam Kershaw
3,623.75 (20%)
The facts with reference to the organization of the partnership of Royce Kershaw & Company will hereinafter be given under another heading. Ultimate Findings of Fact Partnership of Kershaw and Blount A. P. Thomasson, W. H. Martin, and Miriam Kershaw were not partners of Royce Kershaw in the Kershaw and Blount partnership. A. P. Thomasson, W. H. Martin and Miriam Kershaw were not joint venturers with Royce Kershaw in performing the contract to lay 26 miles of railroad track, which contract was owned by the Kershaw and Blount *121 partnership. Petitioner was at no time legally obligated to pay any of the proceeds of the Kershaw and Blount partnership to either A. P. Thomasson, W. H. Martin, or Miriam Kershaw. His payment to these persons of parts of his share in the profits of Kershaw and Blount was a gift to them. Partnership of Royce Kershaw & Company Royce Kershaw & Company completed one job in the latter part of 1942, and profits were credited on the books as follows: Royce Kershaw
40 per cent
A. P. Thomasson
20 per cent
W. H. Martin
20 per cent
Miriam Kershaw
20 per cent The partnership of Royce Kershaw & Company was first formed by oral agreement in 1942, with the partnership interests as stated above. In March 1943, petitioner, A. P. Thomasson, W. H. Martin, and Miriam Kershaw executed the following instrument: "Articles of copartnership made this - day of March, 1943, between A. P. Thomasson, W. H. Martin, Miriam Kershaw and Royce Kershaw. It is the intention of said parties to form a copartnership for the purpose of carrying on the business hereinafter mentioned for which purpose they agree substantially as follows, to the faithful performance of which they bind and *122 engage themselves each to the other, their executors and administrators. "WHEREAS the said A. P. Thomasson and the said W. H. Martin have at various times in the past, beginning with the year 1928 and including the present time, advanced various sums of money to the said Royce Kershaw with the understanding that said parties were to receive a certain proportion of the profits of the enterprises of the said Royce Kershaw and "WHEREAS this agreement on the part of the said Royce Kershaw has been faithfully kept and it is the desire and intention of said parties to reduce this parol agreement of partnership into a written form for the better satisfaction of the parties and the greater efficiency in the handling of the partnership affairs. "NOW THEREFORE, in consideration of the premises and of the formation of said partnership and in consideration of the services and assistance supplied and to be supplied by the above named parties and in consideration of the full assumption of partnership responsibilities by each of the fourt parties named above, the said parties mutually agree as follows: "1st. The firm name and style of said copartnership shall be 'Royce Kershaw and Company' *123 and such partnership shall continue for such length of time as may be satisfactory to each of said parties except in case of death of any of the partners prior to that time. It is agreed that in the event that any of said parties desires to withdraw from said partnership or to wind up the affairs of said partnership, the party so desiring to withdraw or dissolve such partnership shall first notify each of the remaining partners of his intention so to withdraw, and within two weeks thereafter submit to the remaining partners a proposal by him either to sell to said partners or to any of them his interest in said partnership, or to purchase from those desiring to sell their interest in said partnership. Said proposal shall be what is known as a 'Buy and Sell' proposal, both alternatives of which shall be based on the same basic valuations. "2nd. All profits which may accrue from said partnership shall be divided and all losses happening to the said firm, whether from bad debts, depreciation of goods or any other cause, and all expenses of the business shall be borne by said parties in the following proportions, to-wit: Royce Kershaw, Forty (40) percent, Miriam Kershaw, Twenty (20) *124 percent, A. P. Thomasson, Twenty (20) percent, W. H. Martin, Twenty (20) percent. "3rd. Each of said parties shall devote and give as much of his time and attention to the business of said firm as may be necessary to discharge satisfactorily the duties assigned to such firm members, and except as otherwise herein provided, shall receive as compensation of such services such amounts as shall be agreed upon by the partners. The said Royce Kershaw as part of his duties shall handle all of the partnership funds and generally be in charge of partnership finances as well as being in charge of the business of the partnership generally as general manager, with the duties and authority usually incident to such position for the purpose of carrying out fully the object for which this partnership was formed. For such services the said Royce Kershaw shall be paid the annual salary of Ten Thousand dollars ($10,000.00) per annum, payable on his order in equal monthly installments. It is understood that the delegation of these duties does not deprive the other members of the partnership from the privilege of advising and consulting in reference to such matters, and it is further understood that *125 such advice and consultation shall be sought as often as necessary. "4th. All the purchases, sales, transactions, records, and accounts of the firm shall be kept accurately in regular books, which shall be open always to the inspection of all of the partners and their legal representatives, and the account shall be stated and settled between said parties whenever any of them may request. "5th. In all matters respecting the general transactions of the partnership or the management of the business thereof full, complete, and entire control is hereby placed irrevocably in Royce Kershaw, without responsibility for or the necessity of accounting of his actions to the firm or its members except in case of breach of trust or illegal acts. "6th. The purposes for which this partnership is formed are generally to engage in the general construction, engineering, designing construction, and contracting business, with the United States or any agency, subdivision, possession or territory thereof, foreign countries, any State or Commonwealth or subdivision thereof, any City, Town, or County, or subdivision thereof, any agency or instrumentality of any of the above, any corporation, public or *126 private, partnership, or individual: to own, purchase, acquire, sell, operate, use, and enjoy railroads, barge lines, boats, trucks, buses, tracto s, and any and all kinds of equipment necessary or useful in the business, sand, ore, and gravel pits, cement, asphalt, and concrete plants as well as each ingredient thereof, and generally to do and engage in any business necessary or useful for the general furtherance of the purposes for which this partnership is formed; and to borrow money through its duly authorized representatives, and as security therefor to mortgage or pledge any or all of the assets of the partnership, and generally to do and engage in any business not prohibited by law as individual persons may and can do. "7th. The partnership name is to be used only in respect to the affairs and business of the firm, and none of said parties shall subscribe any bond, sign or endorse any draft or bill of exchange, or assume any liability, verbal or written, in the name of said firm, for the accommodation of any other person whatsover, without the consent in writing of the other parties of the partnership, nor shall any of said partners lend or allow to be loaned any of the funds *127 or property of the partnership without such consent of the other partners. "8th. At the expiration of each year an audit of all of the affairs of the partnership shall be made by a certified public accountant at the expense of the partnership. On the completion of said audit and on the basis thereof they may make such division of any profits that may be made as in their judgment shall be advisable, such division to be made as herein provided. In the event that a partner desires to withdraw from the partnership and such partner should decline, or refuse, or fail to make a "Buy and Sell" proposal as herein provided, then at such time a similar audit shall be made of the books and records of the partnership and the whole copartnership effects shall be divided as herein provided in accordance with such audit; but, if, however, the said parties or their legal representatives do not agree to accept such proportion as their respective share then the effects of said partnership shall be sold at public auction, at which all of said parties shall be at liberty to bid and purchase like other individuals, and the proceeds shall be divided after payment of the debts of the firm in the proportions *128 aforesaid. "9th. For the purpose of securing the performance of the foregoing agreements it is further agreed that any of said partners in case of any violation of either of them by the other shall have the right to dissolve this partnership forthwith on his becoming informed thereof, and also to recover his damages for such violation. "10th. The use of the masculine form in this agreement shall be construed to mean or include the feminine. "IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals this day and year first above mentioned. "Witness: /s/ Miriam Kershaw L.S. /s/ Royce Kershaw L.S. /s/ W. H. Martin L.S. /s/ A. P. Thomasson L.S." The Royce Kershaw & Company partnersip contract provided that Kershaw was to be the active manager and was to receive a salary of $10,000, in addition to his share of the profits. All profits, as well as any losses, were to be shared or borne in the following proportions: Royce Kershaw
40 per cent
A. P. Thomasson
20 per cent
W. H. Martin
20 per cent
Miriam Kershaw
20 per cent
Thomasson was active in the business to the extent of keeping up with the work and in giving advice as to *129 making bids. Thomasson was in frequent contact with petitioner and often met him in Columbus, Georgia, Martin's home city, for conferences. Miriam performed no active service. In the latter part of 1943, Martin became apprehensive and withdrew from the Royce Kershaw & Company partnership. At that time he had $8,741.77 to his credit on the partnership books but the financial condition of the partnership was not such that he could withdraw that amount. Martin then sold and transferred his interest to petitioner and Miriam in equal shares and received from them their promissory note for $7,000. The books thereafter showed petitioner's capital interest as 50 per cent, Miriam's as 30 per cent, and Thomasson's as 20 per cent. Payments in money or property were made on the $7,000 note from time to time as the financial condition of petitioner and his wife permitted. Some of it still remains unpaid. The business of Royce Kershaw & Company has not prospered in recent years. The partnership return of Royce Kershaw & Company which was filed for the year 1942, reported the partners' shares of income and credits as follows: Royce Kershaw
$1,628.93
Miram Kershaw
314.46
W. H. Martin
314.46
A. P. Thomasson
314.46
Total
$2,572.31
*130 The partnership return of Royce Kershaw & Company which was filed for the year 1943, reported the partners' shares of income and credits as follows: Royce Kershaw
$16,123.24
Royce Kershaw, Salary
10,000.00
Miriam Kershaw
8,061.62
W. H. Martin
8,061.63
A. P. Thomasson
8,061.62
Total
$50,308.11
The partnership return of Royce Kershaw & Company which was filed for the year 1944, reported the partners' shares of income and credits as follows: Royce Kershaw: Salary
$ 7,179.72
50% of profits
27,616.03
Total
$34,795.75
Miriam Kershaw, 30%
16,569.61
A. P. Thomasson, 20%
11,046.41
Total
$62,411.77 No explanation is given as to why Royce Kershaw's salary for 1944 was fixed at $7,179.72, instead of $10,000 as provided in the partnership agreement and as was paid to him in the previous year 1943. The Royce Kershaw & Company partnership books show: (a) Martin's share of the profits credited to him were: 1942
$ 314.00
1943
8,161.62
Total
$8,475.62 against which he withdrew: 1942
$ 500.00
1943
2,605.80
Total
$3,105.80
(b) Miriam Kershaw's share of the profits credited to her were: 1942
$ 314.00
1943
8,161.62
1944
16,094.95
Total
$24,570.57
*131 against which she withdrew: 1942
$ 100.00
1943
2,004.73
1944
8,101.50
Total
$10,206.23
The share of profits credited on the books of the company to Thomasson is not given here because he is not involved in this proceeding. The railroad construction business is one which sometimes makes money and sometimes does not, and is a business in which capital is a material income-producing factor. Ultimate Findings of Fact Partnership of Royce Kershaw & Company In 1942, the partnership of Royce Kershaw & Company was composed of the following partners and their interests in the net profits were the percentages set opposite the names, as follows: Royce Kershaw
40 per cent
Miriam Kershaw
20 per cent
W. H. Martin
20 per cent
A. P. Thomasson
20 per cent
In 1943, the partnership of Royce Kershaw & Company was composed of the following partners and their interests in the net profits, after the payment of salary of $10,000 to petitioner, were the percentages set opposite the names, as follows: Royce Kershaw
40 per cent
Miriam Kershaw
20 per cent
W. H. Martin
20 per cent
A. P. Thomasson
20 per cent
In 1944, the partnership *132 of Royce Kershaw & Company was composed of the following partners and their interests in the net profits after payment of salary of $10,000 per annum to petitioner, were the percentages set opposite the names, as follows: Royce Kershaw
50 per cent
Miriam Kershaw
30 per cent
A. P. Thomasson
20 per cent
We further find as an ultimate fact that the parties who composed the parrtnership of Royce Kershaw & Company in each of the taxable years, in good faith and acting with a business purpose intended to join together as partners in the present conduct of the business enterprise. Opinion BLACK, Judge: We have no issue presented in this proceeding as to the amount of net income in the year 1942 of the partnership of Kershaw and Blount. That partnership was in existence only in the year 1942. We also have no issue as to the net income of the partnership of Royce Kershaw & Company for the years 1942, 1943, and 1944. The partnership returns for those years are in evidence and we do not understand that respondent makes any contention that the net income of the partnership as shown by those returns is incorrect. Respondent, in his brief, states the issues as raised *133 by the pleadings as follows: "1. Were A. P. Thomasson, W. H. Martin and Mrs. Royce Kershaw, entitled to any of petitioner's share of the profits of the Kershaw-Blount partnership during the year 1942? "2. Was W. H. Martin a bona fide partner of petitioner and A. P. Thomasson in the Royce Kershaw Company during the years 1942 and 1943? "3. Was Mrs. Royce Kershaw a bona fide partner with petitioner and A. P. Thomasson in the Royce Kershaw Company during the years 1942, 1943 and 1944?" Petitioner states the issues in his brief the same as above, except he now concedes that his wife, Miriam Kershaw, was not a member of the partnership of Kershaw and Blount and that the share of profits of that partnership which he gave her in 1942, was taxable income to him. We shall take up the issues in the order of their statement. Issue 1. We decide Issue 1 in favor of respondent. As we have already pointed out, petitioner now concedes that his wife was not a member of the partnership of Kershaw and Blount nor was she a joint venturer with him in his share of the profits. Petitioner also concedes that A. P. Thomasson and W. H. Martin were not members of the partnership of Kershaw and *134 Blount. He does contend, however, that Thomasson and Martin were joint venturers with him in his share of the profits in the partnership of Kershaw and Bolunt. It has been held that although an individual is not a member of a partnership, nevertheless, he may, under certain circumstances, be a joint venturer with one of the partners in his share of the profits. See , and cases there cited. However, in order for the individual to be a joint venturer he must either contribute capital to the joint venture or contribute services of an important and essential character. , and cases there cited. There is no evidence that either Thomasson or Martin contributed any capital to a joint venture with Royce Kershaw in earning his share of the profits of the partnership of Kershaw and Blount. It is true that the evidence shows that petitioner was indebted to Thomasson in an amount of somewhere between $1,500 and $2,000, and to Martin in an amount between $600 and $1,000. But those amounts were in no sense investments in the so-called joint venture with Kershaw, at least there is no evidence that they were. They simply represented *135 loans which Thomasson and Martin had made to petitioner from time to time in carrying on his contracting business. Also there is no evidence that Thomasson and Martin contributed any important and essential services to the so-called joint venture. They may have advised with petitioner at times concerning the carrying on of his part of the partnership of Kershaw and Blount but we think the evidence falls far short of establishing that either Thomasson or Martin rendered any essential and important services such as would make them joint venturers with Kershaw in his share of the profits of the partnership of Kershaw and Blount. It is true that when the partnership of Kershaw and Blount finished its railroad construction contract in 1942, and Kershaw's share of the profits amounting to $18,118.74 was turned over to him, he divided these profits, 40 per cent to him, and 20 per cent each to Thomasson, Martin, and Miriam. That was a generous gesture on his part but we are unable to see where he was legally obligated to make these payments to any one of the so-called joint venturers. He now concedes that he was under no legal obligation to make the payment which was made to Miriam, his wife, *136 and we think that under the evidence we must hold that he was under no legal obligation to make the payments which were made to Thomasson and to Martin. As to this issue, we hold in favor of respondent. Issue 2. We think under the facts, this issue must be decided in favor of petitioner. Martin was not a member of petitioner's family. He was petitioner's father-in-law. He was a businessman of means and when he went into the partnership of Royce Kershaw & Company in 1942, contributing as his capital investment the $3,623.75 share of the profits of the Kershaw and Blount partnership which had been given him by Kershaw, we think he became a full-fledged partner. He was, as we have already stated, a man of means and his property became liable for losses, if the partnership had suffered any losses which could not have been absorbed by the partnership assets. In fact, the evidence shows that Martin realized that a partnership engaged in the contracting business could have losses, as well as profits, and he decided that he had better withdraw from the partnership and he did so at the end of 1943. His interest of 20 per cent in the partnership was acquired by petitioner and Miriam *137 and thereafter petitioner owned 50 per cent interest in the partnership and Miriam owned 30 per cent interest, and Thomasson continued to own his 20 per cent interest. The Commissioner does not contend that Thomasson was not a full-fledged partner and we think undoubtedly he was. It seems to us that it is equally certain that Martin was a partner owning a 20 per cent interest from the time the partnership was orally organized in 1942, up to the time he sold his interest at the end of 1942. As to Issue 2, we held in favor of petitioner. Issue 3. We also decide Issue 3 in petitioner's favor. On the evidence we have found that Miriam Kershaw was a bona fide partner in the business of Royce Kershaw & Company from the time it was orally organized in 1942 on through 1943 and 1944, which is the extent of the years which we have before us. In his deficiency notice, the Commissioner stated: "It is held that Miriam M. Kershaw for the years 1942 to 1948, inclusive, * * * was not a member of the partnership." Inasmuch as we have no year before us later than the year 1944, we make no attempt to hold beyond that year. It would be improper for us to do so. It is true that Miriam did not *138 contribute any capital which "originated" with her but under , that conception is no longer necessary if she contributed capital of her own which really belonged to her regardless of from whom she received it an if there was also an intention to form a real partnership. See ; . In the Yost case, the Fifth Circuit said: "The burden of it [the holding in the Culbertson case] is that as a question of fact we must ascertain from all the circumstances whether 'the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.'" * * * The evidence in the instant case shows clearly that petitioner gave his wife $3,623.75 of his profits which he received from the partnership of Kershaw and Blount. She used this as her capital contribution to the partnership of Royce Kershaw & Company which was formed by oral agreement in the fall of 1942, and which partnership agreement was reduced to writing in the spring of 1943. It is true that Miriam did not render any important services to *139 the partnership during any of the years which we have before us and petitioner does not claim that she did. But that is not necessary provided she contributed capital which she owned in her own right and did so with the intention of forming a bona fide partnership. Commissioner v. Culbertson, Clarence B. Ford, and Yost v. Commissioner, all supra. As to Issue 3, we sustain petitioner. Decision will be entered under Rule 50.